# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Keenan Brown,<br>    Plaintiff,<br><br>    v.<br><br>Wal-Mart Stores, Inc.,<br>    Defendant. | No. 17 C 393<br>Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Defendant's motion for summary judgment [80] is granted. All other pending motions are denied as moot. Civil case terminated.

## STATEMENT

**Facts**[1]

Keenan Brown, who is African American, was hired as a bakery associate at a Wal-Mart store located in New Lenox, Illinois, on or around July 18, 2016. (Def.'s Stmt. Facts, Dkt. # 82, ¶¶ 5, 6.) Robert Bauer was Plaintiff's supervisor. (*Id.* ¶ 8.) On August 17, 2016, Plaintiff got into an argument with a fellow bakery associate named Martha Meyer, who is white and in her 40s. (*Id.* ¶¶ 10, 11.) According to Plaintiff, Meyer approached him, complaining that the dishwasher was not working. (Def.'s Ex. 1, Brown Dep., Dkt. # 82-1, at 104-05.) Plaintiff testified that Meyer "started being abusive"; called him a "rug rat" and "boy"; told him he did not know what he was doing and would not be at the store long; and bragged about her five-year tenure at Wal-Mart. (*Id.* at 105, 114.) On August 24, 2016, Plaintiff called Wal-Mart's internal

---

[1] Wal-Mart spends a good portion of its reply brief challenging in detail Plaintiff's responses to its statements of fact, noting that many fail to comply with Local Rule 56.1. The Court will not address each separate point raised by Wal-Mart, but notes that it will consider only those statements or arguments that are properly supported by record evidence.

ethics hotline and reported that Meyer had berated him and slapped his hand as he was gesturing.[2] (*Id*. at 149, 154-55.) Plaintiff further stated to the hotline that he told Meyer not to speak to him "like that"; he was informed by unspecified individuals that Meyer treated many employees in an intimidating manner; and while Meyer had not touched him again since the August 17 incident, she had been subjecting his work to additional scrutiny. (*Id*. at 152-53.) Plaintiff also indicated in his hotline complaint that he had reported the incident to Bauer who told him to provide a written statement about the incident to Bauer, who intended to address Martha's behavior. (*Id*.)

On August 25, 2016, Plaintiff received a response from the ethics hotline confirming receipt of his complaint and telling him that the investigation could take four to six weeks. (*Id*. at 157.) On September 3, 2016, Plaintiff filed a second complaint against both Meyer and Lori Bade, the assistant manager in the bakery department, asserting that they were retaliating against him by timing his work breaks, increasing his workload, overly scrutinizing his work, and talking about him behind his back. (*Id*. at 159.)

Wal-Mart personnel investigated Plaintiff's complaints, found his claim was substantiated as to Meyer, and closed the investigation. (Def.'s Stmt. Facts, Dkt. # 82, ¶ 17.) Meyer received a written coaching for having pushed away Plaintiff's hand during their confrontation, directing her to "improve on [r]especting her fellow associates." (*Id*. ¶ 18.) Plaintiff's claims of retaliation were not substantiated. During the investigation, Plaintiff

---

[2] According to Plaintiff's September 5, 2016 Individual Statement of Fact, which he provided to Wal-Mart as part of its internal investigation into the incident with Meyer, he pointed his finger at Meyer when she pointed her finger at him. (Pl.'s Ex. 60, Dkt. # 95, at 65 of 110). At his deposition, however, Plaintiff repeatedly denied having pointed his finger at Meyer. (Def.'s Ex. 1, Brown Dep., Dkt. # 82-1, at 117-19, 176-78, 186-88.)

submitted a request for a transfer to the electronics department, which was granted. (*Id.* ¶ 19.) Plaintiff's first day working in the electronics department was September 17, 2016, and his supervisor there was Ronald Wilson, a black male. (*Id.* ¶¶ 20- 21.)

At the beginning of Plaintiff's employment with Wal-Mart, he attended an orientation session in which Wal-Mart's attendance and punctuality policy, among other things, was discussed. (*Id.* ¶ 22.) In the event of absence or tardiness, the policy requires an employee to call in no later than one hour prior to the beginning of the employee's shift. (*Id.* ¶ 24.) The policy further indicates that associates employed for six months or less are deemed to be "new hires," who are subject to termination if they accumulate four or more "occurrences" under the policy. (*Id.* ¶ 25.) An employee accrues one occurrence point for each unauthorized absence and one-half of an occurrence point for each clock-in time that is ten minutes or more after the scheduled shift start time. (*Id.* ¶ 26.)

Plaintiff was absent from work on August 6 and 31, 2016 and September 4, 2016.[3] (*Id.* ¶¶ 28, 29.) Moreover, Plaintiff clocked in past his scheduled start times without calling in on:

- August 16, 2016 (16 minutes late)
- September 16, 2016 (10 minutes late)
- September 20, 2016 (30 minutes late)

(*Id.* ¶¶ 31-33.) Plaintiff asserts that the tardies were a result of the time clock and/or identification badges not functioning properly. (Pl.'s Resp. Def.'s Stmt. Facts, Dkt. # 89, ¶¶ 31-36.) Plaintiff had accumulated 4.5 occurrence points as of September 20, 2016, and on September 21, 2016, Wilson terminated Plaintiff for "excessive absences and/or tardies." (Def.'s

---

[3] Plaintiff responds that all of his absences were reported and either excused or authorized, but the exhibits he cites to, (Pl.'s Exs. 66-69, 77), do not support this assertion.

Stmt. Facts, Dkt. # 82, ¶ 37.)

On October 26, 2016, Plaintiff filed a charge with the Equal Employment Opportunity Commission alleging race, color, and sex discrimination as well as retaliation. (*Id*. ¶ 43.) In the instant lawsuit, Plaintiff sues Wal-Mart for discrimination based on race and sex under Title VII of the Civil Rights Act of 1964 ("Title VII"), and color under Title VII and 42 U.S.C. ¶ 1981; and alleges that Wal-Mart retaliated against him "when [he] demand[ed] justice about how [his] safety was being threatened and daily harassment kept being displayed." (Compl., Dkt. # 1.)

**Standard**

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts do not weigh the evidence or make credibility determinations when deciding motions for summary judgment. *See Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011). Rather, the Court must "construe all factual disputes and draw all reasonable inferences in favor of [ ] the non-moving party." *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 895 (7th Cir. 2016). "A factual dispute is genuine only if a reasonable jury could find for either party." *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (internal quotation marks and citation omitted).

**Analysis**

In addressing discrimination claims under Title VII**,** "district courts should ask 'simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action,' with all the evidence 'considered as a whole.'" *Arce v. Chi. Transit Auth.*, -

4

-- F. App'x --- , No. 16-2882, 2018 WL 3013377, at *3 (7th Cir. June 15, 2018) (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016)). The record is devoid of any such evidence with respect to color or sex. While Plaintiff contends that he was discriminated against based on his gender because the person who slapped his arm, Meyer, is female, the adverse employment action is Plaintiff's termination, not that Meyer hit him. As to race, the only evidence supporting an inference of discrimination is Meyer's use of the term "boy" in her confrontation with Plaintiff. "The Supreme Court has found that evidence of a manager referring to African-American employees as 'boy' was probative of discriminatory animus." *Nichols,* 755 F.3d at 602. However, "the speaker's meaning will depend on context, inflection, and local custom." *Id*.

As described above, Plaintiff's own testimony indicates that Meyer was referring to Plaintiff's age and inexperience, in that she mentioned her five-year tenure with the company, called him a "rug rat," and told Plaintiff he was going nowhere. More importantly, however, is that Meyer was not a decisionmaker; nor does Plaintiff point to any evidence that the "boy" remark was related to the termination decision. *See Meyers v. Indianapolis Pub. Sch. Bd. of Sch. Comm'rs,* 724 F. App'x 485, 487 (7th Cir. 2018) ("Stray remarks made by nondecisionmakers are not evidence that the [discharge] decision had a discriminatory motive."); *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 885 (7th Cir. 2016) ("Remarks can raise an inference of discrimination when they are (1) made by the decision-maker, (2) around the time of the decision, and (3) in reference to the adverse employment action.") (internal quotation marks and citation omitted). Wal-Mart's summary judgment motion as to the race, color, and sex discrimination claims is granted.

"In order to make out a claim for retaliation, [Plaintiff] [is] required to prove (1) that []he engaged in statutorily protected activity; (2) that h[is] employer took an adverse employment action against h[im]; and (3) that the protected activity and the adverse employment action are causally connected." *Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1019 (7th Cir. 2016). "For the causation factor, [Plaintiff] [is] required to demonstrate that 'the desire to retaliate was the but-for cause of the challenged employment action.'" *Id.* (citation omitted). As an initial matter, it is not clear that Plaintiff engaged in statutorily-protected activity. "An employee who opposes an unlawful employment practice engages in protected activity." *Isbell v. Baxter Healthcare, Corp.*, 273 F. Supp. 3d 965, 979 (N.D. Ill. 2017). "'Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient.'" *Id.* (citation omitted). Plaintiff's complaints to the ethics hotline did not mention race, color or gender. While both Wal-Mart's summaries of the ethics complaints and Plaintiff's written submissions indicate that Plaintiff believed he was generally being treated poorly and unfairly, neither attributes the treatment to an *unlawful* employment practice. *See Tank v. T–Mobile USA, Inc.*, 758 F.3d 800, 809 (7th Cir. 2014) ("Complaining about a co-worker's actions is not statutorily protected expression when the complained of conduct does not relate to [protected status].")

Even assuming *arguendo* that Plaintiff satisfied the first element for proving retaliation, he has not pointed to any evidence establishing that retaliation for his complaints was the but-for cause for his termination. Notwithstanding Plaintiff's unsupported contention to the contrary, Wilson, Plaintiff's supervisor in the electronics department, attested in his sworn declaration that he was not aware of Plaintiff's ethics complaints prior to firing Plaintiff. (Def.'s Ex. 4, Wilson

Decl., Dkt. # 82-4, ¶¶ 12-13.) In addition, Wal-Mart has presented evidence supporting its assertion that Wilson terminated Plaintiff based on his violations of Wal-Mart's attendance and tardy policy. (Def.'s Ex. 3, Price Decl., Dkt. # 82-3, ¶¶ 17-25.) Although Plaintiff contends that certain of his absences or late arrivals were authorized or excused, his assertions are unsupported by any record evidence.[4] In any event, Plaintiff points to no evidence that Wilson did not actually believe the violations were valid or that the violations were pretext for firing Plaintiff for an unlawful reason. *See Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 697 (7th Cir. 2017) (noting that "the true question" of a causal link between a protected activity and an adverse action is "whether the proffered reasons were a pretext for retaliation"); *Bagwe*, 811 F.3d at 889-90 (rejecting claim of retaliation because the plaintiff "has not linked her termination to her complaints of discrimination, or established that the reasons given by [the defendant] are pretextual")

Finally, Plaintiff uses the term "hostile work environment" in his filings. To the extent that a hostile work environment claim is properly before the Court, it fails because no reasonable jury could conclude that any harassment of Plaintiff was sufficiently severe or pervasive to be actionable under Title VII. *See Ammons v. Dart*, No. 16-CV-7770, 2018 WL 2096372, at *4 (N.D. Ill. May 7, 2018) (noting that "'stray remarks and the random use of a racial epithet'

---

[4] For example, Plaintiff points to his Exhibit 77, (Dkt. # 95, Page 87 of 110), in support of his assertion that his absences were excused. Exhibit 77 appears to be a report from a Wal-Mart database (it contains the Bates stamp WM-BROWN-0000496) indicating that Plaintiff was absent on August 6, 2016, August 31, 2016, and September 4, 2016. The exhibit, however, is not accompanied by any deposition testimony or affidavit explaining what it is or the meaning of the information contained in the various columns. Nor is it apparent from the printout whether the absences are deemed authorized or excused; thus, the Court finds it does not rebut Wal-Mart's position that Plaintiff was terminated for violating Wal-Mart's attendance policy.

cannot support a claim for a hostile work environment," and concluding that plaintiff's hostile work environment claim was unsuccessful because he failed "to show a workplace permeated with discriminatory ridicule, intimidation, and insult") (citations omitted).

**Conclusion**

For the reasons stated above, Defendant's motion for summary judgment is granted. All other pending motions are denied as moot. Civil case terminated.

Date: July 11, 2018

**Ronald A. Guzmán**
**United States District Judge**